OPINION
Appellant, Sherman W. Pierce ("Pierce"), appeals from Lake County Court of Common Pleas judgment of September 23, 1998, affirming its prior judgment in favor of the State of Ohio (the "state") on Pierce's petition for postconviction relief. This case was remanded to the court of common pleas by this court on May 18, 1998, for the purpose of conducting an evidentiary hearing on two issues raised within the petition for postconviction relief. The trial court conducted the hearing on August 23, 1998, and subsequently entered its judgment from which Pierce now appeals.
On July 28, 1989, appellant was indicted by the Lake County Grand Jury on the following: one count of rape in violation of R.C. 2907.02; one count of kidnapping in violation of R.C. 2905.01; and, one count of felonious sexual penetration in violation of R.C. 2907.12. Specifically, Pierce was accused of taking an eleven year-old girl to his motel room and raping her.
On November 8, 1989, a jury found him guilty on all three counts. Pierce was sentenced to serve a definite term of life imprisonment on counts one and three, and an indefinite term of ten to twenty-five years on count two, the sentences to be served consecutively. On December 15, 1989, appellant filed a timely notice of appeal with this court. InState v. Pierce (Dec. 28, 1990), Lake App. No. 89-L-14-170, unreported, this court affirmed appellant's conviction. On June 7, 1991, the Supreme Court of Ohio denied appellant's motion for leave to appeal from our decision. Thereafter, appellant filed an application with this court to reopen his appeal based upon ineffective assistance of appellate counsel. This court denied appellant's application on August 18, 1995, on the grounds that the application was not timely filed and no good reason existed for the delay. This judgment was affirmed by the Supreme Court of Ohio on February 23, 1996.
On September 20, 1996, appellant filed a petition for postconviction relief and requested an evidentiary hearing. In his petition, as grounds for relief, Pierce raised two issues within an ineffective assistance of counsel argument which are relevant to the current appeal. First, he claims he was denied the effective assistance of trial counsel because his attorney failed to call one Michael Smith ("Smith") as a witness on his behalf. Second, he claims his trial counsel failed to make arrangements for him to wear normal street clothes at trial instead of prisoner's clothing. On January 29, 1997, the trial court, without conducting a hearing, denied appellant's request for postconviction relief and granted the state's motion for summary judgment. Pierce appealed on the grounds the trial court erred in denying his petition without a hearing.
On May, 15, 1998, this court reversed and remanded the case with the following instruction:
 "On remand, the trial court must conduct an evidentiary hearing where the parties may present evidence regarding the issue of appellant's attire at trial and the circumstances surrounding Mr. Smith's testimony. We note that we cannot determine, without further evidence presented at a hearing on these issues, whether overwhelming evidence exists to establish appellant's guilt and whether one or both examples of trial counsel's ineffectiveness, if error, constitute harmless error beyond a reasonable doubt. These determinations, as well as the issues regarding appellant's attire at trial and Mr. Smith's testimony, must first be made by the trial court following an evidentiary hearing on these matters." State v. Pierce (May 15, 1998), Lake App. No. 97-L-033, unreported, at 16.
The trial court conducted the hearing on August 23, 1998. Testimony was taken from five witnesses. On the issue of Michael Smith's potential testimony and trial counsel Anthony Mazzocco's alleged failure to call him as a witness, testimony was taken from Smith, Pierce, and Mazzocco. Pierce's ex-wife Marilyn Pierce, Pierce, and Captain Frank Leonbruno of the Lake County Sheriff's Department testified on the issue of the clothing Pierce wore at his trial.
A key question in dispute at trial was the whereabouts of appellant between 6:00 p.m. and 8:00 p.m. on the evening of July 23, 1989, the time frame in which the offense allegedly occurred. At the postconviction relief hearing, Michael Smith initially testified that he was in the Liberty Bar with Pierce for forty-five minutes that evening, from 7:00 p.m. until 7:45 p.m. Smith testified he was certain he left at 7:45 p.m. because he had to leave to take his son back to his ex-wife. He had to have the boy back by 8:00 p.m. On cross-examination, Smith amended the time frame he was in the bar to from 7:20 p.m. to 7:45 p.m. He testified he was certain it was the evening in question because he remembered Pierce did not come to work the following day. Smith testified he has known Pierce for thirty years, that his sister was married to Pierce's brother, and that at the time of the offense, they worked together at the same company.On direct examination at the hearing, Pierce said he saw Smith, but could not recall at what exact time. He recalled that Smith declined to go to another bar with him because Smith had to drop off his son ("in fifteen minutes").
In contrast, at trial, Pierce testified that he did not see anybody he knew in the Liberty Bar. At his trial, Pierce testified that he went to his ex-wife's apartment complex at 6:30 p.m. — 6:45 p.m., and that he remained in his car in the parking lot drinking a beer for an hour, until 7:30 p.m. — 7:45 p.m. Pierce testified that he left the apartment complex at 7:45 p.m. and went to the Liberty Bar, arriving there by 8:00 p.m. On cross-examination at the postconviction relief hearing, Pierce could not directly account for why he testified at trial that he did not see anyone he knew at the bar, except to say that he was "half lit up."
Marilyn Pierce also testified at trial. She testified that Pierce came to the apartment at 6:30 p.m. and stayed there until about 7:30 p.m. Her testimony indicated, although not explicitly, that he waited inside the apartment, and that when he left, he intended to go to her sister-in-law's house, looking for his daughter.
At the trial, after Marilyn Pierce testified, her mother, Betsey Sertich testified. She testified she saw Pierce at a gas station she drove by at 6:10 p.m. Afterwards, she went to Marilyn's apartment. She testified she did not see Pierce at the apartment. When Pierce was asked on cross-examination at the trial to explain why Sertich did not see him at Marilyn's apartment, he responded that he remained outside the apartment, in his car drinking a beer, as opposed to inside the apartment as Marilyn's testimony had suggested.
Pierce presented one other alibi witness at trial who accounted for his whereabouts at 8:30 p.m. Altogether, at trial, attorney Mazzocco presented three alibi witnesses, accounting for his presence first, at 6:10 p.m., second, from 6:30 p.m. until 7:30 p.m. — 7:45 p.m., and third, at 8:30 p.m.
At the postconviction relief hearing, Pierce testified that he met with Mazzocco twenty times prior to the trial, beginning on the day after the incident. They discussed exactly what he did that day and, also, potential witnesses. Pierce testified that he provided attorney Mazzocco with the name of Smith as a witness for the trial. He testified he thought Mazzocco was going to call Smith as a witness. Pierce said that when he asked Mazzocco afterwards why Smith was not called, Mazzocco said that since the rape test kit came back negative, he "didn't think we needed him."
At the postconviction relief hearing, Smith testified that he spoke to Pierce one time after he was arrested. This conversation allegedly took place before the trial. He testified he knew Pierce was arrested for something that happened on the day he allegedly saw him at the Liberty Bar. He testified he was never contacted by Mazzocco. He also testified he never attempted to contact Mazzocco himself. He testified they never spoke. Nor did he ever speak to the police. Smith signed an affidavit in 1995, approximately six years after the trial, preparatory to the filing of Pierce's petition for postconviction relief. Within the affidavit, Smith stated that Mazzocco was aware of Smith's potential testimony on Pierce's behalf, and Smith's willingness to testify. On cross-examination at the hearing, Smith admitted that this portion of his affidavit was not true, because he had no idea whether or not Mazzocco was aware of him as a potential witness.
Mazzocco testified that he met with Pierce three times a week in the interlude between his arrest in July of 1989, until his trial in November of 1989. Mazzocco testified that Smith was never identified as a potential witness and that he did not have discussions with Pierce about whether to call him as a witness. Mazzocco had no recollection of any conversations about Smith.
Regarding the second issue of what clothes Pierce wore at the trial, Pierce testified at the hearing that he wore dark blue pants, which had four six inch letters on the right leg, L-C-S-D (Lake County Sheriff's Department). He stated he wore a light blue shirt which read Lake County on the back in white lettering. At trial, Pierce was identified as wearing a gray shirt.
Captain Leonbruno of the sheriff's department testified at the hearing for the state. He testified that Pierce could not have been provided with a gray shirt by the sheriff's department because that color was reserved for a class of prisoners called "trustees." He stated that all prisoners charged with felonies wore orange uniforms, the implication being that if Pierce wore his prison garb to the trial, he would have been in an orange uniform.
At the hearing, Marilyn Pierce testified she talked to Mazzocco prior to the trial about obtaining new clothes for Pierce to wear at the trial. While Pierce was in jail awaiting trial, Mazzocco controlled access to his money. She stated Mazzocco told her Pierce was required to wear prison clothes at the trial. On cross-examination at the hearing, she testified that Pierce already owned street clothes which she could have provided for him to wear at trial.
After conducting the evidentiary hearing, the trial court concluded that Pierce failed to present any credible evidence which would create a genuine issue of material fact regarding his claim of ineffective assistance of counsel. The court found that Smith's recently offered testimony ran contrary to the testimony at trial of Pierce and Pierce's alibi witness. Additionally, the court noted that Smith refuted a key portion of his own sworn affidavit at the hearing. Consequently, due to the "stark contrast" in Smith's testimony to the facts established at trial, the court held the lack of credibility of the new proposed testimony rendered it insufficient to create a genuine issue of fact. The court determined it properly granted summary judgment in favor of the state. Likewise, the court found that there was no credible evidence raising a genuine issue of fact as to whether he was forced to wear his prison clothes at trial. Because Pierce's prison clothes were orange, while Pierce testified (at the hearing) he was wearing blue, and he was identified at trial as wearing gray, the court found the dissimilarity of colors was too dramatic to have been mistaken. The court again held the state was entitled to summary judgment. From this decision, Pierce timely filed notice of appeal, citing the following errors:
 1]. "The trial court committed reversible error by failing to employ the proper standard of review for ruling on issues presented during the evidentiary hearing on appellant's request for post-conviction relief.
 2]. "The trial court abused its discretion in overruling defense counsel's objection to the State's speculative questioning of Michael Smith.
 3]. "The trial court abused its discretion by overruling defense counsel's objection to the prosecution's badgering of a witness.
 4]. "The trial court abused its discretion by sustaining the State's objection during closing arguments.
 5]. "The trial court's decision was against the manifest weight of the evidence."
In Pierce's first assignment of error, he argues the trial court applied the wrong standard of review to the issues presented at the postconviction relief hearing. In this point, Pierce is correct. The trial court's judgment entry indicates it mischaracterized the nature of the proceedings it conducted. The court characterized it as a review of whether or not its prior grant of summary judgment was appropriate. That is incorrect. The case was remanded to conduct a postconviction relief hearing on two specific issues. Both sides were free to offer any relevant testimony or evidence. At that point it was no longer a summary judgment exercise, rather, it was a postconviction relief hearing on the merits of Pierce's claim of ineffective assistance of counsel wherein a weighing of the evidence was to occur.
However, in spite of the trial court's mischaracterization, the court conducted a full hearing on these issues presented by Pierce's claim of ineffective assistance of counsel. Each side presented witnesses. Each had the opportunity to offer other evidence, and each argued their case. After considering all the evidence offered by Pierce at the hearing, the trial court concluded that Pierce had failed to rebut the state's evidence supporting its motion for summary judgment. Again, we note this was not a summary judgment exercise, and that, in fact, Pierce had the burden of proof from the outset. In a claim for ineffective assistance of counsel, the defendant-appellant has the burden of proof. State vJackson (1980), 64 Ohio St.2d 107, 110-111.
The order on remand required the trial court to conduct an evidentiary hearing because there were questions of fact regarding a witness's (Michael Smith) potential testimony, and also questions regarding Pierce's attire at trial. An evidentiary hearing was necessary to resolve these issues of fact as they related to establishing the substantive grounds for relief on a claim of ineffective assistance of trial counsel. The court did conduct an appropriate evidentiary hearing and weighed the evidence. The record developed all the facts and issues encompassing Pierce's claim.
Pierce argues, however, that the trial court committed reversible error by simply reaffirming its previous grant of summary judgment (to the state) rather than making a determination whether evidence existed establishing his claim of ineffective assistance of counsel. The basis of the trial court's ultimate conclusion was its finding that the evidence offered by Pierce was not credible. As a postconviction relief proceeding is a collateral civil attack on a judgment, the judgment of the trial court is reviewed under the abuse of discretion standard. Statev. Apanovitch (1995), 107 Ohio App.3d 82, 87. An abuse of discretion is more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
To establish a claim for ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonable representation and that prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show prejudice in this sense, the petitioner must demonstrate that there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id., at paragraph three of syllabus; Strickland v.Washington (1984), 466 U.S. 668. "`A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"Bradley, supra, at 142, quoting Strickland, supra, at 694. To have confidence in the outcome, we must be able to conclude that substantial justice has been done. State v. Brant (Aug. 4, 2000), Portage App. No. 99-P-0037, unreported, at 20. In this analysis, the court must consider the totality of all the evidence before the judge or jury. Bradley,supra, at 142, citing Strickland.
Based on the evidence produced by Pierce at the postconviction relief hearing, we cannot conclude that the court abused its discretion. The evidence neither demonstrated that attorney Mazzocco's performance fell below an objective standard of reasonable representation, or that prejudice occurred.
In the first place, the time frame in which Smith claimed he was with Pierce at the bar directly conflicted with the trial testimony of Pierce and Marilyn Pierce, who testified at trial that Pierce was at Marilyn's apartment during the time Smith claims he was in the bar. Secondly, at trial, Pierce testified he did not see anybody he knew at the bar. Since establishing his alibi was essential to his defense, there is no rational explanation why Pierce would testify he did not see anyone he knew at the bar, if in fact he did, which raises a question of credibility. Third, Smith's own credibility was questionable, in that he admitted that a key section of the affidavit he signed was false, and during his testimony he changed the time frame he claimed to be with Pierce by twenty minutes. Also, Smith and Pierce were friends for thirty years and related by marriage, indicating bias.
Fourth, it was evident from the testimony that Mazzocco paid substantial attention to preparing this case for trial. He met with Pierce the day after his arrest, and, according to Mazzocco, three times a week thereafter. Pierce testified they met twenty times prior to the trial. Given the time Mazzocco evidently spent preparing Pierce's defense, Pierce's assertion that he informed Mazzocco about Smith, an alibi witness, and Mazzocco did not contact him (Smith), is not particularly credible. Mazzocco had no recollection of ever discussing Smith in preparation for trial. Pierce asserted that Mazzocco told him he did not need to call Smith because the rape test came back negative. Yet Mazzocco called three other alibi witnesses, one placing him at 6:10 p.m., one from 6:30 p.m. to 7:30 p.m. — 7:45 p.m., and the last at 8:30 p.m. The notion that Mazzocco would use three witnesses, but decline to put on a fourth who could account for his whereabouts at 7:45 p.m. is totally illogical, and, consequently, not very credible.
Taking the testimony at the hearing on this issue as a whole, and considering the totality of the evidence presented at trial, the trial court concluded the testimony offered at the hearing lacked credibility. Therefore, the trial court concluded this testimony failed to establish a deficiency in Mazzocco's performance as trial counsel. We agree.
With respect to Pierce's attire at trial, the testimony at trial indicated he was wearing a gray shirt. The state's witness, Captain Leonbruno of the sheriff's department testified at the postconviction relief hearing that had Pierce been forced to wear his prison clothing, he would have been in an orange uniform. Pierce testified he wore a blue shirt. The trial court found Pierce's testimony inconsistent with the trial testimony that he was wearing a gray shirt. The testimony at the hearing also established that Pierce's ex-wife could have provided clothing for Pierce to wear to trial which Pierce already owned, indicating that Pierce was not solely dependent upon Mazzocco to release funds for his ex-wife to purchase new clothing.
The trial court found there was a lack of credible evidence establishing Mazzocco's performance was deficient in so far as Pierce's attire at trial was concerned. In reaching its legal conclusion, we cannot say the court abused its discretion. Pierce's first assignment of error is without merit.
In Pierce's second assignment of error, he claims the court abused its discretion in overruling his objection to two questions the state asked Smith. Pierce maintains the questions were speculative, and thus inappropriate. First, both questions asked of Smith went to the issue of whether Smith personally knew, for a fact, that Pierce's trial counsel was aware of his willingness to testify as an alibi witness. Smith had asserted in his affidavit that Mazzocco was aware of Smith's potential testimony. Thus, Smith claimed to have personal knowledge that Mazzocco was aware of him. The questions posed by the state challenged Smith's assertion, and thus were not speculative. In fact, it was this assertion in his affidavit which Smith ultimately had to admit was false. Second, a court, as trier of fact, is not standing in the same shoes as a jury. A court is presumed to be competent on issues of law, and is capable of making an after-the-fact determination as to whether a question or answer should be given any weight in its deliberations due to an evidentiary infirmity. The questions addressed a critical issue in the hearing and went directly to whether Mazzocco's representation was ineffective (whether he failed to call an available alibi witness that he was aware of). The court properly allowed the questions. Pierce's second assignment of error is without merit.
In Pierce's third assignment of error, he asserts the trial court abused its discretion in overruling an objection he made on the grounds the state was badgering his witness. The state was cross-examining Pierce. The colloquy at issue is as follows:
 "Q. So at trial you didn't say that you saw Michael Smith and you had a drink with him; Did you?
"A. I thought I did.
"Q. Okay. But you didn't testify to that?
"ATTY. PARTLOW: Objection, your Honor.
"THE COURT: Overruled.
"Q. You didn't testify to that?
"A. I can't remember."
The questions at issue are simply an attempt by the state to elicit highly relevant testimony regarding what Pierce stated at trial occurred on the night in question. These questions went directly to the credibility of his current assertion that he saw Smith in the Liberty Bar that night. The court did not abuse its discretion in permitting them to be asked. Pierce's third assignment of error is without merit.
Pierce's fourth assignment of error asserts the trial court abused its discretion in sustaining the state's objection to statement(s) Pierce made in his closing argument at the hearing. Parties generally have wide latitude in making closing arguments. However, a limitation placed by the court on a closing argument will not be reversed absent an abuse of discretion. State v. Weaver (June 28, 1996), Lake App. No. 94-L-008, unreported. In his closing argument, Pierce had stated that there were discrepancies in the time frame in which the state alleged the offense occurred, and that, likewise, there were bound to be some discrepancies in the time frames offered by the alibi witnesses. As he developed this argument, Pierce suggested that frequently a defendant files his notice of alibi and the state, in response, subsequently changes the alleged time it claims the offense took place. The implication was that the state changed the time it claimed the offense occurred in this case to obtain a conviction. The state objected immediately to this assertion, and the court sustained the objection. The record does not contain an explanation from the court for its ruling, or from the state regarding the reason for its objection. On its face, the argument suggested prosecutorial misconduct.
Such an argument was not relevant to the issue before the jury, nor was it supported by the record. There was no allegation the state had altered the time it alleged the offense occurred, or manipulated the alleged time in response to a proposed alibi. The time frame within which Smith testified to seeing Pierce was within the period the state alleged the offense had occurred. The state only challenged Smith's testimony to the extent it directly conflicted with the testimony provided by Pierce and his witnesses at trial. Thus, there was no basis in the record to argue the state altered the time of the alleged offense in response to a proposed alibi. We cannot conclude the trial court abused its discretion in not permitting Pierce to continue that particular argument. The argument lacked relevancy and suggested misconduct for which there was no basis in the record. Pierce's fourth assignment of error is without merit.
In Pierce's final assignment of error, he asserts the trial court's denial of the petition for postconviction relief was against the manifest weight of the evidence. He argues the evidence produced at the postconviction relief hearing revealed that trial counsel was ineffective. The standard of review for a manifest weight of the evidence claim is as follows:
 "`In determining whether the verdict was against the manifest weight of the evidence, * * * "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" (Citations omitted.) (Emphasis added.) [State v.] Davis [(1988)], 49 Ohio App.3d [109], at 113." State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11.
We cannot say the court clearly lost its way in resolving the conflicts in the evidence. The analysis supporting this conclusion has been set forth in the evaluation of the previous assignments of error. There has not been a manifest miscarriage of justice. Pierce's fifth assignment of error is without merit. The judgment of the trial court is affirmed.
 ____________________________ WILLIAM M. O'NEILL, JUDGE
NADER, P.J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.