JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Reginald Sevayega, appeals from the judgment of the Common Pleas Court denying his second petition for postconviction relief. For the reasons that follow, we affirm.
 {¶ 2} In December 1992, Sevayega was indicted by the Cuyahoga County Grand Jury for one count of rape, in violation of R.C.2907.02; and two counts of tampering with evidence, in violation of R.C. 2921.12, for attempting to alter evidence to create an alibi. The jury found Sevayega guilty of all counts and the trial court sentenced him to eight to 25 years incarceration.
 {¶ 3} This court affirmed Sevayega's convictions on appeal.State v. Sevayega (Sept. 22, 1994), Cuyahoga App. No. 65942. In our opinion, we summarized the facts leading to his convictions as follows:
 {¶ 4} "On July 20, 1992, Reginald Sevayega, defendant-appellant, was a professor at Cuyahoga Community College ("Tri-C"). After leaving his evening Philosophy class that day, he saw one of his students, Irma Figueroa. In response to a question by Sevayega, Figueroa told Sevayega that she was on her way home. After some other conversation, Sevayega told Figueroa that he knew a shortcut she could use to go to her car. Figueroa, who was new to the college and unfamiliar with the campus, followed Sevayega, who said he would show her the shortcut. As they walked along, Sevayega engaged Figueroa in pleasant conversation. Sevayega led Figueroa to a practice room in the music building. Once they reached the room, Sevayega grabbed Figueroa's arm and pushed her into the room. Once inside, he pinned her against the wall. He held both of her arms
* Sitting by assignment: James D. Sweeney, Retired, of the Eighth District Court of Appeals. above her head, removed her pants, and raped her. After a short time, Figueroa managed to get away and then ran to her car.
 {¶ 5} "Initially embarrassed by the rape, Figueroa did not immediately report it to the police. Sevayega called her the day after the incident and said, "I want more * * * of your juices flowing." He called her again on the next day to ask why she was not in class for the midterm examination. Figueroa continued to skip class and asked university officials to transfer her to another class. She initially told them that Sevayega exposed himself to her, but later told them that she had been raped by Sevayega.
 {¶ 6} "Sevayega was subsequently arrested. During the investigation of the crime, Sevayega asked another of his students, Vicki Challenger, to write a letter on his behalf. In the letter, Challenger described what happened on July 22, the day of the midterm examination. Challenger wrote that Figueroa did not attend class on the day of the midterm. She also wrote that she left the classroom with Sevayega after the exam and that they talked briefly about her plans to go to a local coffee shop with another student. According to Challenger, Sevayega headed to his car after their conversation. Though Challenger's letter correctly indicated that the midterm examination and the other events described in the letter took place on July 22, Sevayega later changed the date to July 20."
 {¶ 7} The Ohio Supreme Court subsequently dismissed Sevayega's appeal. State v. Sevayega (1995),71 Ohio St.3d 1477.
 {¶ 8} On November 21, 1997, he filed a pro se petition for postconviction relief pursuant to R.C. 2953.23. In his petition, he asserted that "impeachment/exculpatory" evidence had been withheld by the prosecutor at his trial. According to Sevayega, on October 2, 1997, a friend of his had gone to the Records Department of the Cleveland Police Department and discovered that the original "Offense/Incident Report" regarding his offenses was not in the file. This same friend returned to the Department on October 6, 1997, and found the report in the file. According to Sevayega, this newly discovered report stated that the victim reported that she had been raped in the "basement of the Arts Building," rather than in a piano practice room in the Humanities Building, as she testified at trial. Sevayega argued that the fact that the incident report was missing from the file on October 2, 1997, indicated that the prosecutor had committed aBrady violation in purposely withholding this document from defense counsel at trial. Also attached to Sevayega's petition was a "Chronology" of events prepared on September 11, 1992, by Kathryn M. Hall, Director of Affirmative Action and Diversity at Tri-C. In this chronology, Hall reported that Figuera met with her and reported that Sevayega had raped her "as they rounded a dark hallway." Although Sevayega admitted in his petition that this chronology had been provided to his defense counsel prior to trial, he argued that, in conjunction with the allegedly missing police report, it indicated that the prosecutor had knowingly allowed the victim to testify falsely at trial that she had been raped in a piano practice room.
 {¶ 9} Finally, Sevayega argued that there were discrepancies on the allegedly newly discovered police report regarding the date on which Figueroa reported the rape. The report, dated 10/30/1992, stated that "on 8/19/02 received an assignment to do an investigation [of] rape that occurred at the Arts Building at Cuyahoga Community College. On 8/28/92 the victim came to the Sex Crime Unit and reported that on 7/20/92 at approx. 1015 hrs. the above-named suspect vaginally raped her in the basement of the Arts Building * * *." (Emphasis added). A supplemental narrative to the report, also dated 10/30/92, reported that "on8/17/92 after obtaining statements from the victim, the suspect and witnesses involved in the case, we also obtained a large amount of evidence * * *." (Emphasis added). Sevayega argued that the discrepancies between the dates indicated that the prosecutor falsified the supplemental report and, further, supported his claim that the prosecutor had knowingly allowed Figueroa to present perjured testimony at trial.
 {¶ 10} The trial court subsequently denied Sevayega's petition as untimely filed. It further found that, even if the petition were timely, it should still be denied:
 {¶ 11} "Petitioner offers not a scintilla of evidence to prove his outrageous allegations. Even if the report was missing from the file at some point in October of 1997, this in no way suggests that the report was not in the file and available to the defense at the time of trial. Petitioner offers no evidence to support his allegations and this Court will not leap to the conclusion of misconduct by the prosecution.
 {¶ 12} "Assuming arguendo that the information in the report were not available to defense at the time of trial, Petitioner's rights to due process and a fair trial were not violated. Any internal memorandums or documentation by prosecutors or their agents, prepared in connection with a case, must only be disclosed if they contain any exculpatory evidence under Crim.R. 16(B)(2).
 {¶ 13} "Petitioner argues that the report in question contained exculpatory evidence. The floor of the [A]rts [B]uilding where the rape occurred is different in the report than it is in other evidence placed before the court at trial. This fact, in and of itself, can hardly be seen as exculpatory. To be considered exculpatory, evidence must be of the caliber to create a strong possibility of a different result at trial.Dayton v. Martin (1987), 43 Ohio App.3d 87. Clearly, a slight discrepancy in a report does not rise to this high standard.
 {¶ 14} "In Giglio v. United States (1972), 405 U.S. 150, the Court held that due process is not violated when new evidence is discovered after trial that may have been useful to the defense, unless the presentation of such evidence would have been likely to change the verdict at trial. Clearly, the fact that the report may mistakenly state the floor on which the rape took place does not change the overwhelming weight of the rest of the evidence presented at trial. Petitioner also points to some other small discrepancies contained in reports. None of the issues raised by Petitioner rise to the standard provided for inGiglio."
 {¶ 15} Sevayega's appeal of the trial court's ruling was subsequently dismissed by this court as untimely filed.
 {¶ 16} In May 2003, Sevayega filed a second petition for postconviction relief. In his petition he argued that:
 {¶ 17} "[T]he postconviction trial judge abused her discretion in denying his petition when she (1) based her decision upon an erroneous view of the facts and the law; (2) failed to comport with the Supreme Court precedent when considering a claim of `actual innocence'; (3) failed to comply with the mandates of R.C. 2953.21; and (4) failed to be impartial in the proceedings." He then offered 14 specific reasons regarding how the trial judge had allegedly abused her discretion in denying his petition.
 {¶ 18} The gist of Sevayega's second petition, however, was that the trial court erred in denying his petition because he was not informed by the prosecutor prior to trial of the various discrepancies in the victim's statements regarding where the rape occurred or of alleged discrepancies on the police reports regarding when the rape was investigated by the police or reported by the victim. According to Sevayega, this information was exculpatory and also could have been used to impeach Figueroa's testimony at trial.
 {¶ 19} Attached to Sevayega's petition were the same documents that had been attached to the first petition, as well as (1) a Cleveland Police Department Offense/Incident Report dated May 1, 2003, regarding the rape investigation; (2) a copy of a civil lawsuit filed against Sevayega and Tri-C by Figueroa on July 19, 1993; and (3) a 1992 article from The Call and Post Newspaper reporting on Sevayega's arrest and stating that the victim alleged that Sevayega raped her in "the classroom after other students had left."
 {¶ 20} After holding a hearing regarding Sevayega's petition, the trial judge denied his petition. Sevayega has now appealed that ruling. In his single assignment of error, he contends that the trial court erred in denying his second petition for postconviction relief.
 {¶ 21} A trial court's ability to review successive postconviction petitions filed pursuant to R.C. 2953.21 is limited. As stated in R.C. 2953.23(A):
 {¶ 22} "[A] court may not entertain * * * a second petition or successive petitions for similar relief on behalf of a petitioner unless * * *:
(1) Both of the following apply:
(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *."
 {¶ 23} Accordingly, in addressing Sevayega's petition, we must first determine whether he set forth sufficient grounds to allow the trial court to entertain his successor petition. Sevayega must show that he was "unavoidably prevented from discovery of the facts upon which [he] must rely to present the claim for relief"[1] and that, but for the constitutional error, he would not have been found guilty. Sevayega's petition fails on both prongs.
 {¶ 24} First, Sevayega has not demonstrated that he was "unavoidably prevented" from discovery of the documents attached to his petition. Most of the documents were attached to his first petition; obviously, therefore, they were available to him as early as 1997. With respect to the three new documents attached to his second petition, Sevayega was clearly not prevented from discovering the 1992 Call and Post article nor the civil lawsuit filed against him by Figueroa before he filed his first petition for postconviction relief in 1997. Therefore, the only document at issue is the Cleveland Police Department Offense/Incident Report dated May 1, 2003. This document contains the same narrative as that on the original Offense/Incident Report, which was attached to Sevayega's first petition. Accordingly, this document offers nothing new to support Sevayega's petition.
 {¶ 25} Even assuming, however, for the sake of argument, that Sevayega was unavoidably prevented from discovering the documents attached to his petition, he must also show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found [him] guilty." R.C. 29053.23(A)(1)(b). Sevayega alleges denial of his right to due process and a fair trial based on the prosecution's alleged failure to disclose exculpatory evidence as required by Brady v.Maryland (1963), 373 U.S. 83, and its progeny. Brady held, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87.
 {¶ 26} We find no merit to Sevayega's argument. First, we are not persuaded that the prosecutor withheld any documents from defense counsel or allowed Figueroa to present perjured testimony. Frank Gasper, lead prosecutor on the case, testified at the hearing regarding Sevayega's second petition that at a pretrial, he read the entire police report to Alan Rossman, defense counsel, as was his usual practice and the policy of the Major Trials Unit. He testified further that he recognized there were discrepancies in Figueroa's initial statement to the police that the rape occurred in the basement of the Arts Building and her subsequent statement that it occurred in a piano practice room of the Humanities Building. Gasper testified that he gave Figueroa's statement to Rossman to read at a pretrial. He testified further that because he believed Figueroa was confused about where the rape occurred, he instructed the detectives to meet Figueroa at the college and take photographs of where she determined the rape occurred. Gasper then gave copies of the photographs to Rossman. Gasper also testified that he was particularly careful in the way he handled discovery in this case because Sevayega's mother was a friend of Stephanie Tubbs Jones, Cuyahoga County Prosecutor at the time, and she was concerned about the case.
 {¶ 27} Alan Rossman testified that he was aware at trial of inconsistencies in Figueroa's various statements regarding where the rape occurred and, further, that he cross-examined both her and Detective Hastings, one of the detectives who investigated the crime, about these inconsistencies. He testified further that he had read the written statement Figueroa had given to Detective Hastings on August 28, 1992. In that statement, Detective Hastings specifically asked Figueroa, "Tell me in your own words what exactly happened to you on 7/20/92 at approximately 2015 hours while you were in the Arts Building of Cuyahoga Community College." She responded, "I think it was the Arts Building, but the campus is big and I get mixed up." Furthermore, in the statement, she reported that Sevayega grabbed her, pushed her up against a wall and then raped her, but did not mention the piano practice room. Thus, contrary to Sevayega's argument, defense counsel was aware prior to trial that Figueroa had changed her story regarding where the rape occurred and he cross-examined her regarding the inconsistencies in her story.
 {¶ 28} Moreover, due process is not violated when new evidence that may have been useful to the defense is discovered after trial, unless the presentation of such evidence would have been likely to change the verdict at trial. See Giglio v. UnitedStates (1972), 405 U.S. 150, 154. The evidence against Sevayega at trial was overwhelming. In light of the overwhelming evidence against him, he has not demonstrated, by clear and convincing evidence, that the discrepancies in the reports were material to the jury's verdict, nor that they "in any reasonable likelihood [would] have affected the judgment of the jury." Id.
 {¶ 29} Finally, Sevayega's claims are barred by the doctrine of res judicata. As this court stated in State v. Apanovitch
(1995), 107 Ohio App.3d 82, 89, "res judicata may be applied to petitions which raise issues upon the same facts or newly discovered evidence."
 {¶ 30} Here, it is apparent that Sevayega's second petition raises the exact same issues raised in his first petition. Moreover, it is apparent from the trial court's opinion quoted above that the trial court, in ruling on his first petition, expressly considered these issues. Accordingly, his petition is barred by the principles of res judicata.
 {¶ 31} Sevayega contends that res judicata should not apply in this instance, however, because his first petition was filed pro se. This court considered and rejected this same argument, however, in State v. Adamson (Mar. 23, 1995), Cuyahoga App. No. 67187, where we stated:
 {¶ 32} "A petition for postconviction relief is a civil proceeding. No constitutional right to counsel exists in a postconviction proceeding. We find no reason to preclude the application of res judicata because a petitioner in a civil proceeding without the right to counsel acted pro so. This is especially true where, as here, the claims were actually raised in the earlier petition."
 {¶ 33} As in Adamson, all of the claims raised in Sevayega's second petition were raised in his first petition. Accordingly, his second petition is barred by res judicata.
 {¶ 34} Because Sevayega failed to demonstrate, as required by R.C. 2953.23(A), that he was unavoidably prevented from discovery of the facts upon which he relied to present his claim and that no reasonable factfinder would have found him guilty of the offense, and, further, because his petition is barred by res judicata, the trial court properly denied his second petition for postconviction relief.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Gallagher, J., concur.
[1] He does not contend that a newly recognized constitutional right gives him standing to raise his successor petition.