The STATE of Ohio, Appellee,

v.

APANOVITCH, Appellant.

[Cite as *State v. Apanovitch* (1995), 107 Ohio App.3d 82.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68742.

Decided Nov. 30, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Christopher L. Frey* and *John W. Monroe,* Assistant Prosecuting Attorneys, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Dale A. Baich* and *John B. Heasley,* Assistant Public Defenders; *Berkman, Gordon, Murray, Palda & Devan* and *Mark R. Devan; Freedman & Bornstein* and *Alan Freedman,* for appellant.

PATTON, Chief Justice.

Petitioner Anthony C. Apanovitch stands convicted and sentenced to death for aggravated murder, aggravated burglary, and rape of Mary Ann Flynn. His convictions and sentences were affirmed by this court and the Supreme Court of Ohio. See *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394.

This is Apanovitch's second petition for postconviction relief, filed pursuant to R.C. 2953.23(A). We affirmed the dismissal of his first petition, finding his twelve assigned errors raised claims that were alternately barred by principles of *res judicata* or the failure to support those claims with newly discovered evidence. See *State v. Apanovitch* (1991), 70 Ohio App.3d 758, 591 N.E.2d 1374, motion to certify record overruled (1991), 61 Ohio St.3d 1418, 574 N.E.2d 1089.

Apanovitch then sought a writ of habeas corpus in a petition filed with the United States District Court for the Northern District of Ohio. The petition set forth twenty-four separate substantive and procedural grounds for the writ. The district court issued an order and memorandum opinion dismissing the petition in its entirety. Apanovitch appealed to the United States Court of Appeals for the Sixth Circuit. Subsequently, he asked the court to stay proceedings because he had filed the present successor petition for postconviction relief in the court of common pleas. The Sixth Circuit granted his motion and ordered the appeal held in abeyance until final disposition of the state proceedings.

The successor petition, amended three times, sets forth a total of eleven claims for relief. These claims are based upon newly discovered evidence derived from the production of a homicide file compiled by the Cleveland Police Department and obtained pursuant to a public records request. See *State ex rel. Apanovitch v. Cleveland* (Feb. 6, 1991), Cuyahoga App. No. 58867, unreported, 1991 WL 18676, affirmed *sub nom. State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 597 N.E.2d 147. They are:

1. The state failed to provide relevant discovery information which was generated by the Cleveland Police Department during the scope of its investigation.

2. An improperly constituted jury returned Apanovitch's indictment for aggravated murder and aggravated robbery.

3. The state failed to provide counsel for Apanovitch with all information related to the allegations in the possession and control of the Cleveland Police Department.

4. The state failed to provide Apanovitch's counsel with all information related to the allegations in the possession and control of the state of Ohio.

5. Apanovitch was denied effective assistance of counsel when the state of Ohio denied him access to information material to the guilt phase of trial.

6. The prosecution engaged in misconduct by failing to make material and favorable evidence available prior to trial.

7. Apanovitch's convictions and sentences are void or voidable because the prosecutor withheld material and favorable information from Apanovitch.

8. The state failed to fully disclose the details of a deal offered to witness Howard Hammond, who was to testify that he overheard Apanovitch admit the charged offenses.

9. The state improperly insinuated before the jury that witness Hammond recanted his allegation that he overheard Apanovitch admit the charged offenses as a result of intimidation by another prison inmate.

10. Governmental action interfered with and prevented Apanovitch from raising state and federal constitutional claims and issues at trial, on direct appeal and federal habeas corpus proceedings.

11. The state used perjured, misleading, inaccurate, or unreliable statements at trial.

The trial court dismissed the successor petition. In its findings of fact and conclusions of law, the court noted that principles of *res judicata* apply between federal and state court decisions. Having reviewed the district court's memorandum opinion, the trial court found that because the district court had "reviewed the exact issues raised by Apanovitch's Claims for Relief Nos. 1, 3, 4, 5, 6, 7, 8, and 11, they are barred by the doctrine of *res judicata*." The trial court also found that Apanovitch was precluded from raising claims 2 and 9, since they could have been raised on direct appeal. Finally, the trial court found that claim 10 failed to state any specific claim for which relief could be granted.

## I

We begin with the second assignment of error:

"The trial court erred in determining that Apanovitch's successor post-conviction claims were barred by res judicata, thus violating appellant's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution."

Apanovitch claims the trial court erred by determining that the claims raised in the successor petition were barred by *res judicata* because the district court addressed the same claims in the habeas corpus petition.

R.C. 2953.23(A) permits, but does not require, the court to entertain a second or successive petition for similar relief based upon the same facts or on newly discovered evidence. Since a postconviction proceeding is a collateral civil attack on a judgment, the trial court has the same discretion to deny relief as in any other civil postjudgment motion. See *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67, 75–76. Principles of *res judicata* bar the assertion of any claim that was or could have been raised at trial or on direct appeal. *Id.,* citing *State v. Duling* (1970), 21 Ohio St.2d 13, 50 O.O.2d 40, 254 N.E.2d 670; *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus. To invoke discretionary relief, Apanovitch must show that " 'some objective factor external to the defense impeded counsel's efforts' to raise the claim" in his prior petition. *McCleskey v. Zant* (1991), 499 U.S. 467, 493, 111 S.Ct. 1454, 1469–1470, 113 L.Ed.2d 517, 544. Additionally, Apanovitch must show actual prejudice flowing therefrom.

This appeal comes to us under unusual circumstances. The district court heard the petition for habeas corpus before Apanovitch had raised the same claims in the state courts.

Addressing the habeas corpus petition, the district court stated:

"Eleven of the *Brady* violations charged are addressed for the first time in the original petition for a writ of habeas corpus. These charges were not addressed on direct appeal to any other court. Under Ohio Rev.Code Ann. § 2953.21, Ohio courts will consider charges relying on evidence *dehors* the record in a post-conviction petition, but Apanovitch did not raise them at that time. He does not charge the evidence is newly discovered.

"Under *Wainwright v. Sykes*, 443 [433] U.S. 72, 87, 97 S.Ct. 2497, 2506 [53 L.Ed.2d 594, 608] (1977), these charges are barred from federal habeas review absent a showing of 'cause' and 'prejudice'. Apanovitch presents no justification for not presenting these charges to the Ohio courts and does not show that he

'will be the victim of a miscarriage of justice', *id.,* if the charges are not adjudicated. Accordingly, these eleven charges are dismissed."

The remaining four claims related to (1) information indicating other individuals were suspects in Flynn's rape and murder; (2) the state's withholding of information proving that the hair of unknown origin could only belong to the murderer; (3) the state's failure to disclose that three witnesses did not observe scratches on Apanovitch's face; and (4) the state's withholding of information indicating the victim died between 11:30 and midnight. The district court found no evidence to show that any of these alleged *Brady* violations were unknown to Apanovitch prior to the expansion of the record. Moreover, the district court noted that Apanovitch made no showing that any of these charges provided new evidence not already considered by the jury.

█ We find that the trial court properly relied on the district court opinion to find that the claims in the successor petition had been previously determined and that *res judicata* required dismissal. R.C. 2953.23 provides:

"(A) Whether a hearing is or is not held, the court may, in its discretion and for good cause shown, entertain a second petition or successive petitions for similar relief on behalf of the petitioner based upon the same facts or on newly discovered evidence."

Apanovitch admits he raised the same issues in the successor petition that he raised in the habeas corpus petition. These claims were litigated in the federal court, so *res judicata* applies, *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 25 OBR 89, 494 N.E.2d 1387, syllabus, and the court of common pleas could accept the district court's findings as a basis for summarily dismissing the petition.

We are aware the Ninth Appellate District has recently held "that prior post-conviction relief petitions cannot act as *res judicata* for later petitions in the same case * * *." See *State v. McMinn* (May 3, 1995), Medina App. No. 2373–M, unreported, 1995 WL 256174. The court found that the discretion afforded trial courts to hear successor petitions based upon the same facts under R.C. 2953.23(A) is inconsistent with the complete bar presented by *res judicata.*

We disagree with *McMinn* because we believe it misconstrues the purpose of R.C. 2953.23. It should be noted the General Assembly labeled that section "appeal." R.C. 2953.23(B) provides:

"(B) An order awarding or denying relief sought in a petition filed pursuant to R.C. 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to R.C. Chapter 2953. of the Revised Code."

R.C. 2953.23 is enabling legislation authorizing appeals of successor petitions based upon the same facts or newly discovered evidence. The trial court retains

discretion to consider these issues, but may summarily dismiss the petitions and create a final judgment. Thus, *res judicata* may be applied to petitions which raise issues upon the same facts or newly discovered evidence, and the trial court's decision is appealable.

■ In our view, principles of *res judicata* are no less applicable simply because R.C. 2953.23(A) affords the trial court discretion to hear successor petitions based upon the same facts. The discretion afforded by R.C. 2953.23(A) is the discretion to entertain the successor petition in the first instance. Although *res judicata* is not discretionary in its application, neither is it self-executing. *Res judicata* is an affirmative defense which must be raised in a responsive pleading or it is waived.

We believe our view comports with the Supreme Court's recent pronouncements in *Steffen*, which have particular applicability in situations when petitioners make repeated postconviction filings.

■ In *Steffen*, the court noted that "[a] lax standard for habeas corpus review might give litigants incentives to withhold claims in order to manipulate the system and create disincentives to present fresh claims." 70 Ohio St.3d at 411–412, 639 N.E.2d at 77, citing *McCleskey, supra*, 499 U.S. at 491–492, 111 S.Ct. at 1468–1469, 113 L.Ed.2d at 542–543. For this reason, trial courts have greater leeway when addressing successor petitions for postconviction relief and are not required to file findings of fact and conclusions of law when declining to entertain a second or successive petition for postconviction relief which alleges the same grounds as earlier petitions. See *State ex rel. Workman v. McGrath* (1988), 40 Ohio St.3d 91, 532 N.E.2d 105.

The Supreme Court has held that additional filings made after a first round of direct appeals and postconviction relief are likely to be made "for purposes of delay" in an attempt to abuse the court system. *Steffen, supra*, 70 Ohio St.3d at 412, 639 N.E.2d at 77–78. We believe successor petitions made on identical facts or issues are presumptively more likely to be filed for purposes of delay. In our view, forbidding courts to apply principles of *res judicata* to successor petitions ignores the obvious—defendants have been employing delaying tactics which serve only to further undermine public confidence in the expeditious administration of justice. *Res judicata* is "an integral part of the law of this state," *Rogers v. Whitehall, supra*, 25 Ohio St.3d at 69, 25 OBR at 90, 494 N.E.2d at 1388, and, among things, seeks "to save time and to relieve court congestion." *Henderson v. Ryan* (1968), 13 Ohio St.2d 31, 38, 42 O.O.2d 65, 69, 233 N.E.2d 506, 511. Although we constantly seek to assure ourselves that a conviction is supported by sufficient evidence, appellate review of convictions is not endless. The Chief Justice, writing for the court in *Steffen*, stated:

"We arrive at a point, however, where greater certitude is not reasonably possible. There comes a time when the possibility that something else can be discovered approaches the vanishing point. Then we must end our inquiry and act upon the conclusion we have reached. Procrastination will not satisfy the soul." *Id.*, 70 Ohio St.3d at 407, 639 N.E.2d at 73–74.

With these principles in mind, we note Apanovitch has filed a second successor petition (third overall). At oral argument, counsel for Apanovitch stated he had received fingerprint records from the Federal Bureau of Investigation and used those records as the basis for the second successor petition filed in July 1995. Counsel for Apanovitch failed to give any adequate reason why he did not seek a continuance in this court so that the trial court could consolidate the separate petitions. This would have been a simple matter in view of the fact that this appeal had not been perfected until March 27, 1995 and briefing not completed until June 1995. To be sure, Apanovitch did request this court to expedite the appeal, but that is an empty gesture in view of the fact that he is simultaneously pursuing appeals in both the state and federal courts. We consider this an untenable result in light of *Steffen.*

Apanovitch argues that the district court did not reach the substance of his *Brady* claims, finding that the failure to present them to the state courts constituted a procedural bar to habeas corpus relief in the federal courts. When he appealed to the Sixth Circuit, he asked it to hold the appeal in abeyance until he had the opportunity to present his claims in the state courts. Because the Sixth Circuit agreed to stay the appeal, Apanovitch views this as tacit approval of his state court filing and, thus, a prima facie showing of "good cause" sufficient to satisfy the requirements of R.C. 2953.23(A) and prohibit the trial court from dismissing the petition on grounds of *res judicata.*

We disagree with Apanovitch's self-serving characterization of the Sixth Circuit's stay order. Nothing in the Sixth Circuit order can reasonably be construed as indicating that it "directed Apanovitch to follow Ohio law and present the claims to the state court through a successor post conviction petition." Appellant's Brief at 23. The Sixth Circuit order reads, in its entirety:

"This matter comes before the court upon the motion of the Apanovitch-appellant, Apanovitch asking that the appeal be held in abeyance pending final resolution of a successor petition for post-conviction relief filed in the Cuyahoga County Court of Common Pleas pursuant to Ohio Rev.Code § 2953.23(A).

"Upon consideration of the motion and the memorandum of law offered in support thereof, and the response and supporting memorandum filed by the respondent opposing the motion and asking that briefing be initiated; it is

"ORDERED that the motion to hold the appeal in abeyance be, and hereby is, granted. Counsel for the Apanovitch-appellant shall advise the court forthwith of the final disposition of the state proceedings."

We believe the Sixth Circuit granted the stay in order to avoid duplication with separate postconviction proceedings and avoid the piecemeal appeals we have previously alluded to. The district court issued its ruling on July 28, 1993. It appears the district court denied Apanovitch's motion to amend judgment on December 29, 1993. The record shows Apanovitch filed his successor petition in the court of common pleas on March 11, 1994. The Sixth Circuit issued the above order on May 9, 1994. At the time of the appeal, two similar petitions were pending in separate courts. By staying the appeal, the Sixth Circuit avoided wasting its resources on multiple filings.

Apanovitch took his chances by raising the *Brady* material in the district court. He had a full opportunity to present his evidence for hearing. Because the common pleas court has the discretion to entertain successor petitions for postconviction relief for good cause shown, the trial court could reasonably find that the district court's ruling gave Apanovitch a more than adequate chance to present his *Brady* claims. On these facts, we find that the trial court did not abuse its discretion by finding that Apanovitch failed to establish good cause by filing the successor petition.

Accordingly, we find that the trial court did not abuse its discretion by summarily dismissing the petition for postconviction relief because that petition raised claims that had been previously addressed by the district court. The second assignment of error is overruled.

## II

The first assignment of error states:

"The court below erred by failing to grant post-conviction relief. This error violated appellant's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution."

Apanovitch maintains that evidence recently made available to him is so compelling that it suggests that the state's failure to disclose it prior to trial constitutes a violation of the state's duty to disclose favorable evidence under the standard set forth in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Moreover, he maintains the cumulative effect of this newly discovered evidence is such as to call into question the validity of his conviction under *Kyles v. Whitley* (1995), 514 U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490, in

which the Supreme Court of the United States reversed a conviction when the existence of newly obtained criminal evidence cast doubt on a verdict.

In *Brady v. Maryland*, the Supreme Court of the United States held that the state has an affirmative duty to divulge evidence favorable to the accused upon request. In *Kyles*, the court focused on four aspects of materiality for *Brady* purposes:

First, favorable evidence is material, and constitutional error results from its suppression by the government if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*, 514 U.S. at ——, 115 S.Ct. at 1566, 131 L.Ed.2d at 506–507. A " 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*; see, also, *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Second, a defendant may show a *Brady* violation by showing that the favorable evidence could reasonably be taken to "put the whole case in such a different light as to undermine confidence in the verdict." *Id.* Third, if the reviewing court should find constitutional error there is no need for further harmless error review. *Id.* Fourth, the state's disclosure obligation turns on the cumulative effect of all suppressed evidence favorable to the defense, not on the evidence considered item by item. *Id.*, 514 U.S. at ——, 115 S.Ct. at 1567, 131 L.Ed.2d at 507–508.

Apanovitch now claims (as he did in the district court) that the following pieces of newly discovered evidence were withheld at trial and might have assisted his defense.[1] These are taken from paragraph 37 of the successor petition:

A. The state withheld information that Flynn was a secretor.

B. Flynn expressed fear of a former tenant who had threatened her with a gun.

C. Flynn, a nurse/midwife, occasionally gave her house keys to pregnant women who needed a place to stay. One of these women had a boyfriend who had used the basement window to go in and out of the house.

D. Some of Flynn's friends did not tell the police they heard her complain about a painter.

E. After an unknown assailant stole Flynn's purse during a smash and rob, she told friends she was afraid after she received a telephone call from a person seeking a reward in exchange for the return of her wallet.

---

1. Amendments to the successor petition raised other information the state allegedly withheld, but petitioner does not raise them in this appeal; thus, we consider them waived. See App.R. 12(A).

F. Flynn and a friend ran personal ads in a local magazine and received "strange calls" as a result. She and her friend also held several wine and cheese parties at her house.

G. During their first two interviews with the police, Flynn's tenants did not say they heard a loud noise coming from Flynn's side of the duplex at midnight on the night of the murder.

H. An unknown person attempted to break into a residence across the street from Flynn on the night of the murder by using a basement window.

I. Two witnesses originally told the police Flynn arrived home at one time and testified at trial she arrived home at another time.

J. The wife of Flynn's former tenant had been the object of three attempted rapes while living in Flynn's duplex.

K. The state deliberately withheld statements by Apanovitch. At trial, a police officer testified Apanovitch asked him to notify him *when* he was indicted. Police department documents, however, indicated Apanovitch asked the police to notify him *if* he was arrested or indicted.

L. The state deliberately withheld information which may have implicated (i) a local family known as neighborhood burglars; (ii) a person who had cleaned Flynn's carpet and expressed a personal interest in her; (iii) an exterminator who left his watch at Flynn's house and was given her house key so that he could retrieve it; (iv) a former tenant, evicted by Flynn, who had threatened her to the point where she told her friends she was afraid of him; (v) Flynn's former boyfriend, who had threatened and assaulted her; and (vi) an early suspect, subsequently released by the police, who matched the description of a suspicious male seen in the area on the night of the murder.

M. The state deliberately withheld documents relating to a hair found on Flynn's body which they believed belonged to her murderer, but did not match Apanovitch's hair. In addition, the withheld documents suggest investigators misled the court when they testified to the location of the hair.

N. Police records show Flynn died between 10:30 p.m. and midnight, contrary to court testimony by the county coroner.

O. One Ronnie Shelton, popularly referred to as the "West Park Rapist," was tried for acts committed against thirty-two victims. These acts occurred both before and after Flynn's murder. Police reports indicated Shelton routinely entered his victims' residences through either a basement or first floor window, used a knife or sharp object to threaten his victims and orally and vaginally raped them.

We find the evidence is not material because there is no probability that had the evidence been disclosed at trial the result would have been different. In making this determination, we are mindful that, for the most part, the material is devoid of exculpatory content. Thirteen of the fifteen pieces of information fail to establish Apanovitch's innocence. Instead, Apanovitch uses them in an attempt to demonstrate the existence of reasonable doubt. But in doing so, he raises mere possibilities which, while not factually impossible, are so improbable as to be nearly impossible.

In *Kyles, supra,* the court found that the withheld evidence made the state's case much stronger and the defense case much weaker than the full facts suggested. *Id.,* 514 U.S. at ——, 115 S.Ct. at 1563, 131 L.Ed.2d at 502–503. Significant to the court's determination was the fact that the state withheld information that its informant, and the person Kyles had suggested as the murderer, had changed important elements of his story. Moreover, the state withheld information that could have impeached eyewitness identification.

In the present case, the undivulged information was not material to the defense and does not come close to establishing the same kind of doubt as the evidence in *Kyles.* Without giving an exhaustive review of all the evidence, we note that much of it is misrepresented to serve Apanovitch's intended purpose.

Apanovitch's claim that one of Flynn's tenant's, Harold Burgess, threatened her with a gun is not substantiated by the police records. The police report states, "The victim has said that once Harold [Burgess] and his wife had fought and she locked him out. The male knocked on the victims [*sic*] door and had a gun. The male wanted to go through the victim's apartment to get to his apartment but the victim refused and instead called the police." Nothing in this report can be construed to show Burgess threatened Flynn with a gun.

Apanovitch alleges that the police withheld information that Flynn gave her house keys to pregnant women whom she met at the hospital where she was employed as a nurse/midwife. One of those women had a boyfriend who visited her by entering Flynn's house through the basement window. Apanovitch theorized that any one of these persons had access to the house and that the boyfriend had entered Flynn's house in a manner similar to her assailant. What Apanovitch fails to mention is the boyfriend used the basement window some eights months before the murder, and the police reports further showed that Flynn never mentioned having any personal problems with the male, other than her concern that the male "did not take care" of his girlfriend.

The police allegedly withheld information that "many" of Flynn's friends did not tell the police they heard her complain about a painter. In fact, only one of Flynn's friends specifically said Flynn failed to mention problems with a painter.

Two other friends did not mention a painter, although the police report does not affirmatively indicate whether they were asked about a painter. The police report shows at least five other friends mentioned a painter who continued to bother Flynn by persisting in asking Flynn out, even though she repeatedly rejected his advances.

In paragraph 37(L) of the successor petition, Apanovitch lists six possible suspects. None of these persons, however, had any remote connection to the Flynn murder. Nor for that matter did the police records give Apanovitch any reason to suppose these persons did have a connection with Flynn's murder. As a group, their connection to Flynn was either fleeting (the carpet cleaner and exterminator) or remote in time (the former tenant and former boyfriend had not seen Flynn for months preceding her murder). As to the remaining persons listed in paragraph 37(L), the police records gave no indication that they had any connection to Flynn's murder, and the successor petition gives no meaningful explanation why they should be considered as possible suspects.

None of this additional material constitutes favorable evidence, since there is no probability, much less a reasonable probability, that had the evidence been disclosed to the defense the outcome of the trial would have been different.

 The only two arguable pieces of exculpatory evidence are information that Flynn was a type A secretor and information which contradicted the placement of a hair of unknown origin found on Flynn's body.

We addressed the issue of Flynn's secretor status in Apanovitch's first petition for postconviction relief and rejected it because the trial transcript indicated that Apanovitch could have used the allegedly withheld evidence at trial and, in any event, the information was of limited importance to the state, since a medical technician testified she had no physical evidence linking Apanovitch to Flynn's death. See *State v. Apanovitch*, 70 Ohio App.3d at 760–761, 591 N.E.2d at 1375–1376. We further noted that the dissenting justices on the Supreme Court drew attention to the fact that regardless of whether the state proved Flynn's secretor status, there was an eighty percent chance she was a type A secretor. See *State v. Apanovitch*, 33 Ohio St.3d at 30, 514 N.E.2d at 405–406, fn. 3. Given the statistical likelihood of Flynn's secretor status, subsequent confirmation of that status can hardly be considered new evidence.

The district court likewise rejected this claim, noting, "The serologic evidence as presented at trial did not draw Apanovitch into the pool of possible assailants by including him in a group to which he otherwise would not have belonged. It merely *did not exclude* him from being the assailant." *Apanovitch v. Tate* (N.D.Ohio 1993), No. 1:91CV2221, unreported, Memorandum Opinion at 13.

Evidence of a single strand of long, black hair found on Flynn's body had been raised at trial, on direct appeal, and with the district court in the petition for habeas corpus. Apanovitch claims that recently released reports from the coroner's office indicate that the hair found on Flynn was located under her hands, which had been bound behind her back. He maintains that the position of the hair made it impossible to conclude that it could have fallen by chance from police or medical personnel on the scene; hence, it only could belong to the killer.

At trial, the evidence conclusively showed that the hair did not belong to Apanovitch. In fact, the state admitted it had no physical evidence tying Apanovitch to the murder. The district court thus noted there was no evidence to show that any facts about the origin of the hair were unknown to Apanovitch prior to the expansion of the record. *Apanovitch v. Tate, supra,* at 16. Consequently, there is no chance that the evidence would have "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles, supra,* 514 U.S. at ——, 115 S.Ct. at 1566, 131 L.Ed.2d at 506.

■ Moreover, the location of the hair was sufficiently known so that Apanovitch could have raised it in his first petition for postconviction relief. On direct appeal, Justice Herbert R. Brown, writing for the dissenting justices, noted the presence of the hair on Flynn's bound hands. He stated, "Another piece of the evidence which disturbs me is the human hair *which was found on the back of the victim's hand.*" (Emphasis added.) 33 Ohio St.3d at 31, 514 N.E.2d at 406. Under the circumstances, this argument is barred by principles of *res judicata,* since it could have been raised on direct appeal. See *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus.

We have also considered the cumulative effect of the suppressed evidence favorable to the defense, *Kyles, supra,* 514 U.S. at ——, 115 S.Ct. at 1567, 131 L.Ed.2d at 507–508, and find there is no probability the outcome of the trial would have been different. Most of the withheld information is not exculpatory; it simply raises additional possibilities that fail to counteract the circumstantial evidence against Apanovitch. The remaining blood and hair evidence would not have any additional impact, since the jury already knew that that evidence did not inculpate him. Viewed as a whole, the fifteen pieces of information do not undermine our confidence in the verdict. The second assignment of error is overruled.

### III

The third assignment of error states:

"The trial court erred in denying appellant any opportunity to conduct discovery of necessary facts and evidence to justify his opposition to summary dismiss-

al, or to develop and support his claims for relief, thus violating appellant's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution."

Among the items Apanovitch sought were records and police files not yet produced by the public records request, files held by the prosecuting attorney, depositions of the two prosecutors who tried Apanovitch, depositions of homicide detectives, depositions of personnel employed by the county coroner, and records held by the coroner.

 The substance of this assignment had been raised in Apanovitch's previous public records request. In *State ex rel. Apanovitch v. Cleveland* (Feb. 6, 1991), Cuyahoga App. No. 58867, unreported, 1991 WL 18676, Apanovitch requested access to public records pursuant to R.C. 149.43. The state opposed the records request, claiming that the records requested were excepted from release. After conducting an extensive *in camera* review of the sought information, we determined which records should be made available to Apanovitch. The Supreme Court affirmed our ruling in *State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 597 N.E.2d 147.

Apanovitch incorrectly claims that this document request should not bar his right to seek further discovery. We recently addressed discovery issues in the context of postconviction proceedings under R.C. 2953.21 and determined that a petitioner who has availed himself of a public records request has received all the discovery he is entitled to receive. *State v. Lott* (Nov. 3, 1994), Cuyahoga App. Nos. 66388–66390, unreported, 1994 WL 615012. In the present case, Apanovitch's "discovery" request asked for the same items that were the subject of the public records litigation. That issue has been litigated to finality and cannot be reopened.

We are aware the Supreme Court has recently stated, "A defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief." *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph six of the syllabus. At least one court, in response to this syllabus, has stated:

"We take that to mean not only that the Public Records Act, R.C. 149.43, cannot be employed to obtain material for use in support of a petition for postconviction relief, but also that materials obtained through the Public Records Act cannot be used in support of a petition." See *State v. Walker* (1995), 102 Ohio App.3d 625, 627, 657 N.E.2d 798, 800.

We have no occasion to consider the import of these decisions, since the successor petition for postconviction relief predated *Steckman,* and then-applicable law permitted the use of the Public Records Act. The third assignment of error is overruled.

## IV

The fourth assignment of error states:

"The trial court erred in denying appellant an evidentiary hearing on the allegations raised in the first successor petition for post-conviction relief, thus violating appellant's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution."

Apanovitch claims that the successor petition presented new evidence that had not been heard by the trial court and set forth constitutional claims that entitled him to relief, and that material issues of fact and law remain in dispute.

R.C. 2953.21(C) provides that before granting a hearing, the court shall determine whether there are substantive grounds for relief. The trial court denied a hearing on the petition, finding "there are no substantive grounds for relief."

In *State v. Jackson* (1980), 64 Ohio St.2d 107, 18 O.O.3d 348, 413 N.E.2d 819, the court held that before a hearing is granted, the petitioner bears the initial burden in a postconviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the claimed error. *Id.* at 111, 18 O.O.3d at 351, 413 N.E.2d at 822. "Broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions." *Id.;* see, also, *State v. Williams* (1991), 74 Ohio App.3d 686, 692, 600 N.E.2d 298, 302.

We have found that the petition does not raise any evidence tending to exculpate Apanovitch; it merely raised "broad assertions" of possible scenarios which were so unlikely as to be nearly impossible. R.C. 2953.21 requires petitions for postconviction relief to contain facts, not possibilities. Under the circumstances, Apanovitch failed to assert cause for an evidentiary hearing.

Apanovitch maintains that the Sixth Circuit's stay order sufficiently demonstrates "good cause" entitling him to an evidentiary hearing. We rejected this same argument in our discussion of the first assignment of error. The fourth assignment of error is overruled.

## V

The fifth assignment of error states:

"The trial court erred in failing to issue sufficient findings of fact and conclusions of law in regard to Apanovitch's successor petition for post-conviction relief, thus violating appellant's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution."

In *State ex rel. Workman v. McGrath, supra,* the court held a trial court is not required to file findings of fact and conclusions of law when declining to entertain a second or successive petition for postconviction relief which alleges the same grounds as earlier petitions.

Apanovitch attempts to distinguish *Workman* by stating that the allegations in the successor petition had not been raised in the first petition. However, these same allegations were raised in the district court in a petition for habeas corpus. Consequently, the successor petition is, in fact, a "successor" petition to the habeas corpus petition. Under the circumstances, the trial court exercised its discretion and summarily dismissed the successor petition and, thus, had no duty to issue more thorough findings of fact and conclusions of law. The fifth assignment of error is overruled.

*Judgment affirmed.*

BLACKMON and MATIA, JJ., concur.