[Cite as *State v. King*, 2017-Ohio-181.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 103947, 103948, and 103949

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EVIN KING

DEFENDANT-APPELLANT

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-94-312576-ZA

**BEFORE:** Blackmon, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 19, 2017

**ATTORNEYS FOR APPELLANT**

Jennifer P. Bergeron
Mark A. Godsey
Ohio Innocence Project
P.O. Box 210040
Cincinnati, Ohio 45221


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Anthony Thomas Miranda
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Evin King ("King") appeals from the trial court's denial of his petition for postconviction relief, motion for relief from judgment pursuant to Civ.R. 60(B), and application for DNA testing and assigns eight errors for our review.[1]   Specifically, King argues that (1) the trial court violated R.C. 2953.21(E) by denying the petition without holding an evidentiary hearing; (2) he established that he was actually innocent of murder; (3) the trial testimony of the state's experts was false and misleading; (4) his trial and postconviction counsel provided ineffective assistance; (5) the trial court's admission of the "scientifically unsupportable" testimony of the state's experts violated his due process rights; (6) the state violated his due process rights, both at the time of trial and during postconviction proceedings, by withholding exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (7) the trial court violated R.C. 2953.74(E) by denying his request to upload a DNA profile obtained during postconviction proceedings into Combined DNA Index System ("CODIS"); and (8) the trial court violated R.C. 2953.81(B) by failing to order the state to provide him with the data and materials pertinent to postconviction DNA testing.

{¶2}   Having reviewed the record and pertinent law, we reverse and remand. The apposite facts follow.

{¶3} On the morning of June 22, 1994, King's girlfriend, Crystal Hudson ("Hudson") was found murdered in her bedroom closet.   Hudson had been strangled and her body was nude and partially decomposed.   On July 5, 1994, King was indicted for

---

[1] *See* appendix.

the murder of Hudson, in violation of R.C. 2903.02. King pled not guilty to the indictment and the matter ultimately proceeded to a jury trial.

{¶4} At trial, testimony established that Hudson was last seen alive at 11:00 a.m. on June 21, 1994. The state presented witnesses who saw King at the victim's apartment at various times during the 24-hour period from the morning of June 21 to the morning of June 22. King presented witnesses who testified that they saw King at places other than the victim's apartment during this time period.

{¶5} Investigators recovered semen from Hudson's vagina and rectum, as well as scrapings from underneath her fingernails. DNA testing was performed on the semen and King was not a match. The matter found underneath Hudson's fingernails was untestable at the time as far as DNA was concerned. The state's theory during trial was that Hudson had sex with an unidentified male prior to being murdered by King, and the state supported this with expert testimony that the semen was hours to days old at the time of Hudson's death. King's theory was that Hudson was killed by the unidentified man whose semen, and thus DNA, was found in her vaginal and rectal swabs. The biological material found in Hudson's fingernail scrapings was essentially downplayed at trial, because it was not scientifically tested. A complete recitation of the facts presented at trial can be found in *State v. King*, 8th Dist. Cuyahoga No. 68726, 1996 Ohio App. LEXIS 4945 (Nov. 14, 1996) ("*King I*"). King was convicted of Hudson's murder and sentenced to a prison term of 15 years to life.

{¶6} Thanks to advancements in DNA testing, King now has evidence that excludes him as the source of the DNA found in the victim's fingernail scrapings, as well

as evidence that the DNA profile from the fingernail scrapings is consistent with the DNA that was found in the semen. "In short, DNA from one man — who was not Evin King — was found both on the victim's rape kit and underneath her fingernails."[2] Additionally, King has evidence that refutes the state's expert testimony regarding the time the semen was deposited in the victim.

{¶7} King requested additional DNA test results and materials from the state "[t]o complete his assessment of the case and confirm his hypothesis" that the "semen present in the vagina and rectum of [the victim] was deposited contemporaneously with her death," and thus, "Unknown Male #1 is [the victim's] killer." King additionally requested that the DNA profile be uploaded into CODIS to determine if the individual could be identified.

{¶8} On November 30, 2015, the trial court denied King's amended successive petition for postconviction relief, amended motion for relief from judgment, and motion for DNA testing. The trial court issued findings of fact and conclusions of law in which it concluded that the new evidence — including the 2009 DNA testing results and the documents that refute the trial testimony regarding the time of the rape — created, at best, a "battle of the experts." It is from this order that King appeals.

### Petition for Postconviction Relief

---

[2]Prior to this appeal, King filed various postconviction motions related to the new DNA evidence, which the trial court denied. This court affirmed in *State v. King*, 8th Dist. Cuyahoga No. 97683, 2012-Ohio-4398 (the new DNA results do not clearly and convincingly establish King's actual innocence under R.C. 2953.23(A)(2)) ("*King II*").

{¶9} King's first, second, and fourth assignments of error pertain to the trial court's denial of his petition for postconviction relief.

## Standard of Review

{¶10} A postconviction relief proceeding is a collateral civil attack on a judgment, therefore, we review the trial court's ruling for an abuse of discretion. S*tate v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77. A trial court's judgment regarding a postconviction petition filed pursuant to R.C. 2953.21 will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence. *Id*. at _ 58. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶11} R.C. 2953.21(A) permits a person who has been convicted of a criminal offense and who claims that there was a constitutional violation that rendered the judgment void or voidable to file a petition asking the court to set aside the judgment or grant other appropriate relief within 365 days after the transcript was filed in the direct appeal. For untimely or successive petitions for postconviction relief, there is a heightened pleading requirement. R.C. 2953.23(A). *See also State v. Mack*, 8th Dist. Cuyahoga No. 101261, 2015-Ohio-2149, ¶ 9. It is undisputed that the petition in the case at hand is untimely and successive.

{¶12} R.C. 2953.23(A)(1) provides, in relevant part, that a court may not entertain an untimely or successive petition unless the petitioner is able to demonstrate that the following pertinent parts of the statute apply:

(a) [T]he petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief * * * [and]

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted[.]

{¶13} Furthermore, R.C. 2953.23(A)(2) provides, in relevant part, that a court may entertain an untimely or successive petition if:

The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed * * * and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case * * *, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense[.]

{¶14} Under R.C. 2953.21(A)(1)(b), actual innocence means that

had the results of the DNA testing * * * been presented at trial, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the person's case * * *, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted[.]

### R.C. 2953.23(A)(2)

{¶15} King argues that he is entitled to relief under R.C. 2953.23(A)(2) because "all available admissible evidence" points to his innocence. In support of his actual innocence claim, King emphasizes that (1) he was excluded as a contributor to the biological material recovered from Hudson's vagina, rectum, and fingernail scrapings, (2) the DNA profile recovered from sperm found in Hudson's vagina and rectum is consistent with the DNA profile recovered from the fingernail scrapings, (3) the damage to Hudson's rectum and the bruises on her body consistent with strangulation indicate that she was raped at the time of death, and (4) the opinions of three DNA experts

demonstrate that the trial testimony of the state's experts was scientifically invalid and that the semen collected from Hudson's body was deposited contemporaneously with her death.

{¶16} In King's 2010 petition for postconviction relief, he argued that the new DNA test results proved he was actually innocent. However, in *King II*, this court found that this evidence, standing alone, did not clearly and convincingly establish King's actual innocence. *King II* at ¶ 19. The concurring opinion in *King II* states, in part, as follows:

> Unless King can offer some explanation or testimony that refutes or casts doubt on the testimony of [the state's experts], the trial court was right in denying the request for relief. Specifically, it would take a hearing with an expert or a report that can reasonably question or refute both [the state's experts'] claims that the sperm was deposited prior to the murder, to make a more compelling argument that the origin of the fingernail scrapings is "outcome determinative" in this case.

{¶17} King went back to the trial court in 2015 armed with expert reports that either challenge the state's experts' opinions or request additional DNA testing materials to reach a conclusion on the issue. Upon review, we find that the trial court abused its discretion when it denied King's request for additional DNA testing materials, request that the "unknown" DNA profile be uploaded into CODIS, and request for an evidentiary hearing. Hudson's autopsy report shows that she was strangled to death, and there is evidence of bruising on her head, face, and torso. Additionally, she had damage to her rectum, and semen was found in her vagina and rectum. When viewed in light of the

new advanced DNA test results, this evidence suggests that the victim was raped and murdered by the same man whose DNA was found on her body. It is undisputed that this man is not King.

{¶18} We are aware that King's motion for postconviction relief is successive and he has presented this argument before. However, "[t]his court has chosen not to apply the doctrine of res judicata in cases where it would be inequitable * * *." *State v. McGraw*, 8th Dist. Cuyahoga No. 102807, 2016-Ohio-205, ¶ 16.

> If DNA testing has the proven ability to 'exonerate wrongly convicted people,' we can perceive no viable argument that matters of judicial economy should supersede the law's never-ending quest to ensure that no innocent person be convicted. The refinement of DNA testing has shown that law and science are intersecting with increasing regularity. When scientific advances give the courts the tools to ensure that the innocent can go free, those advances in science will necessarily dictate changes in the law.

(Citations omitted.) *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654, ¶ 24 (8th Dist.).

{¶19} Accordingly, we order that King be granted access to the DNA test results and testing material, that the unknown DNA profile be uploaded into CODIS, and that King be granted an evidentiary hearing . *See State v. Johnson*, 8th Dist. Cuyahoga No. 100503, 2014-Ohio-2646, ¶ 20 ("the use of new DNA testing to discover new biological material that was previously undiscoverable, is grounds for granting the application"). Additionally, we reverse the court's denial of King's petition for postconviction relief as being premature.

{¶20} King's first, seventh, and eighth assigned errors are sustained. All other assigned errors are rendered moot pursuant to App.R. 12(A)(1)(c).

**{¶21}** Judgment reversed and case remanded for proceedings consistent with this opinion.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON,   JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
FRANK D. CELEBREZZE, JR., J., DISSENTS
WITH ATTACHED DISSENTING   OPINION

FRANK D. CELEBREZZE, JR., J., DISSENTING:

**{¶22}** I must respectfully dissent from the majority opinion.   I would find that the trial court's judgment denying King's application for DNA testing is not a final appealable order because the trial court's November 30, 2015 judgment entry fails to set forth any reasons for denying King's application.

**{¶23}** R.C. 2953.73(D) requires the trial court to "enter a judgment and order that either accepts or rejects the application [for DNA testing] and that includes within the judgment and order *the reasons for the acceptance or rejection* as applied to the criteria and procedures set forth in sections 2953.71 to 2953.81 of the Revised Code."

(Emphasis added.) Ohio courts have distinguished between judgment entries that provide insufficient reasons for denying an application for DNA testing and entries that fail to set forth any reasons for denying an application.

{¶24} In *State v. Smith*, 8th Dist. Cuyahoga No. 87937, 2007-Ohio-2369, this court explained that when a trial court's judgment entry does not provide sufficient reasons — rather than failing to state any reasons — for denying an application for DNA testing, this court has jurisdiction to remand the matter to the trial court for further explanation. *Id.* at ¶ 10. In *State v. Richard*, 8th Dist. Cuyahoga No. 99449, 2013-Ohio-3918, the trial court, in denying the defendant's application for DNA testing, issued the following journal entry: "[d]efendant's application for DNA testing filed November 26, 2012, is denied, as it does not fulfill the requirement of the statute as to being 'outcome determinative.'" *Id.* at ¶ 9. This court held that the trial court's judgment denying the application for DNA testing was contrary to law and an abuse of discretion because it failed to provide any reasons as to how the court reached its conclusion. *Id.* Accordingly, this court reversed the trial court's judgment denying the application and remanded the matter, instructing the trial court to "state its reasons for finding that DNA testing would not be outcome determinative." *Id.* at ¶ 18.

{¶25} In *State v. Newell*, 8th Dist. Cuyahoga No. 85280, 2005-Ohio-2853, the trial court, in denying the defendant's application for DNA testing, issued a journal entry that stated, in its entirety, "[d]efendant's motion for DNA testing hereby is denied." *Id.* at ¶ 3. This court dismissed the appeal for lack of a final appealable order, concluding that the court's failure to set forth any reasons for denying the application contravened the

mandates of R.C. 2953.73(D). *Id*. at ¶ 6. In *State v. Hickman*, 9th Dist. Summit No. 22279, 2005-Ohio-472, the trial court denied the defendant-appellant's application for DNA testing in a journal entry that stated, "upon due consideration of this court, it is hereby ordered that the defendant's motion is denied." *Id*. at ¶ 3. The Ninth District dismissed the appeal for lack of a final appealable order, concluding that the trial court's journal entry neither apprised the applicant of the reasons for denying his application nor enabled the appellate court to properly entertain the appeal on the merits. *Id*. at ¶ 10.

{¶26} In the instant matter, the trial court's November 30, 2015 journal entry denying King's application for DNA testing provides, in relevant part, "[King's] application for DNA testing, filed 6/12/2015, is denied." Like *Newell* and *Hickman*, the trial court failed to delineate its reasons for rejecting King's application, as required by R.C. 2953.73(D).

{¶27} Accordingly, I dissent from the majority's conclusion to reverse and remand. I would find that the trial court's judgment denying King's application for DNA testing is not a final appealable order.

{¶28} King intertwines the issues raised in his application for DNA testing with the issues raised in his successive petition for postconviction relief. In other words, he shoehorns his requests for a CODIS upload of the unknown DNA profile and access to the DNA testing results and materials, and his actual innocence argument into both his application for DNA testing and his successive petition for postconviction relief. Although I would find that the trial court's judgment denying King's application for DNA testing is not a final appealable order, R.C. 2953.23(B) provides that an order denying

relief sought in a petition for postconviction relief is, in fact, a final judgment that may be appealed. In order to avoid piecemeal litigation — which courts do not prefer — I would examine this matter on the merits rather than dismissing the appeal based on the trial court's failure to comply with R.C. 2953.73(D).

{¶29} I would respectfully dissent from the majority's conclusions that the trial court prematurely denied King's successive petition for postconviction relief and abused its discretion by denying King's requests for a CODIS upload of the unknown DNA profile, access to the DNA testing results and materials, and an evidentiary hearing. I would affirm the trial court's judgment in all respects.

## I. Postconviction DNA Testing

{¶30} First, I respectfully disagree with the majority's conclusion that the trial court abused its discretion by denying King's requests for an upload of the unknown DNA profile into CODIS and access to the DNA testing results and materials. In reaching this conclusion, the majority essentially finds that the trial court abused its discretion by denying King's application for DNA testing.

{¶31} The majority analyzes the issues raised in King's seventh and eighth assignments of error under R.C. 2953.23(A)(2), which governs untimely or successive petitions for postconviction relief; however, these assigned errors pertain to Ohio's statutory scheme for postconviction DNA testing, set forth in R.C. 2953.71 et seq. We review a trial court's decision to accept or reject an eligible inmate's application for DNA testing for an abuse of discretion. R.C. 2953.74(A); *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654, ¶ 12 (8th Dist.). I would conclude that the trial

court did not abuse its discretion by denying King's application for postconviction DNA testing.

## A. CODIS Upload

{¶32} In his seventh assignment of error, King argues that the trial court violated R.C. 2953.74(E) by denying his request for a CODIS upload of the unknown DNA profile. R.C. 2953.74(E) provides that:

> [i]f an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code *and the court accepts the application*, the eligible offender may request the court to order, or the court on its own initiative may order, the bureau of criminal identification and investigation to compare the results of DNA testing of biological material from an unidentified person other than the offender that was obtained from the crime scene or from a victim of the offense for which the offender has been approved for DNA testing to the combined DNA index system maintained by the federal bureau of investigation.

(Emphasis added.)

{¶33} In my view, King's reliance on R.C. 2953.74(E) is misplaced. King fails to appreciate the distinction between DNA testing and a comparison of DNA testing results to CODIS. The clear and unambiguous language of the statute provides that DNA testing results may be compared to CODIS *if* the trial court accepts the application and DNA testing is conducted.

{¶34} King's 2004 application for DNA testing requested DNA testing of the biological material recovered from Hudson's fingernails. The trial court granted King's application in 2008, and the DNA testing was conducted in 2009. King could have requested a comparison of the results of the 2009 DNA testing — including the unknown DNA profile — to CODIS; however, he failed to do so.

**{¶35}** Unlike his 2004 application, King did not request DNA testing in his 2015 application; rather, King requested a CODIS upload of the unknown DNA profile. Furthermore, the trial court denied King's 2015 application. Thus, King is not entitled to a CODIS upload under R.C. 2953.74(E).

**{¶36}** King further argues that he is entitled to a CODIS upload under R.C. 2953.74(B)(2), which provides, in relevant part,

> If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if * * * [t]he offender had a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, *the test was not a prior definitive DNA test* that is subject to division (A) of this section, and the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section *would have been outcome determinative at the trial stage in that case*.

(Emphasis added.) In my view, King's reliance on R.C. 2953.74(B)(2) is misplaced because the prior DNA testing was "definitive" and the DNA testing that King requested in his 2015 application — a CODIS upload of the unknown DNA profile — would not be outcome determinative.

### 1. Definitive DNA Test

**{¶37}** King acknowledges that prior DNA testing has been conducted regarding the same biological evidence that he seeks to have tested, and that he was excluded as a contributor to the biological material recovered from Hudson — both at the time of his trial and in 2009. Nevertheless, King contends that the prior DNA testing was not definitive, and "additional DNA testing could determine the source of the DNA."

**{¶38}** R.C. 2953.71(U) defines a definitive DNA test as follows:

a DNA test that clearly establishes that biological material from the perpetrator of the crime was recovered from the crime scene and also *clearly establishes whether or not the biological material is that of the eligible offender.* A prior DNA test is not definitive if the eligible offender proves by a preponderance of the evidence that *because of advances in DNA technology there is a possibility of discovering new biological material from the perpetrator that the prior DNA test may have failed to discover.* Prior testing may have been a prior "definitive DNA test" as to some biological evidence but may not have been a prior "definitive DNA test" as to other biological evidence.

(Emphasis added.)

**{¶39}** In *State v. Prade*, 126 Ohio St.3d 27, 2010-Ohio-1842, 930 N.E.2d 287, the defendant-appellant was convicted of murdering his ex-wife. Investigators discovered a bite mark that the killer left on the fabric of a lab coat that the victim was wearing when she was murdered. However, the killer's DNA was "overwhelmed or diluted" by the significant amount of the victim's blood on the lab coat. *Id.* at ¶ 18. Thus, the 1998 DNA testing of the bite mark showed only the victim's DNA.

**{¶40}** Both the trial court and the Ninth District concluded that the 1998 DNA testing was definitive because the defendant was excluded as a contributor to the biological material recovered from the lab coat. The Ohio Supreme Court, however, disagreed and concluded that the prior DNA testing was not definitive:

the only information that the DNA testing on the lab coat revealed was that [the victim's] blood was present on her lab coat. The state's expert agreed that the 1998 DNA "test results [did] not give [him] any information about the killer" and that "the bite mark show[ed] [him the victim's] DNA only." Therefore, the testing excluded defendant only in the sense that the DNA found was not his, because it was the victim's. But the "exclusion" excluded everyone other than the victim in that the victim's DNA overwhelmed the killer's DNA due to the limitations of the 1998 testing

methods.    Therefore, the exclusion was meaningless, and the test cannot be deemed to have been definitive.

*Id*. at ¶ 19.    Furthermore, the court held that "a prior DNA test is not 'definitive' within the meaning of R.C. 2953.74(A) when a new DNA testing method can detect information that could not be detected by the prior DNA test."    *Id*. at ¶ 23.

**{¶41}** Subsequently, in   *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, the Ohio Supreme Court explained that a prior DNA test is not definitive and an applicant would be entitled to further testing of DNA evidence if the applicant could show "'by a preponderance of the evidence that because of advances in DNA technology there is a possibility of discovering *new biological material from the perpetrator* that the prior DNA test may have failed to discover.'"    (Emphasis added.) *Id*. at ¶ 35, quoting R.C. 2953.71(U).    Furthermore, the court explained that the DNA testing statutes

> now permit testing to positively identify the DNA's source.    R.C. 2953.74(E) allows the trial court to order biological material from the crime scene to be compared to [CODIS] or compared to any identified person to determine whether that person is the DNA source.

*Id.*

**{¶42}** In the instant matter, the prior DNA testing — both at the time of trial and in 2009 — excluded King as a contributor to the biological material recovered from Hudson.  Unlike *Prade*, the biological material recovered from Hudson was not diluted or compromised in any way, and the DNA testing did not exclude everyone other than Hudson.    Furthermore, unlike *Noling*, King does not argue that there is a possibility of discovering new biological material from the perpetrator based on advances in DNA

technology.   Instead, King argues that the contributor of the unknown DNA profile could be identified if the profile is uploaded into CODIS.

**{¶43}** The Cuyahoga County Coroner's Office's "DNA Laboratory Examination Report," dated January 29, 2009, provides, in relevant part, "[t]he [unknown] male DNA profile obtained from [Hudson's] vaginal swab was searched in the Ohio DNA database. The profile will be maintained on file for future comparison."   The record reflects that this search failed to identify the unknown DNA profile's contributor.

**{¶44}** King takes issue with the fact that the unknown DNA profile was "searched" in rather than "uploaded" into the state database.   However, R.C. 2953.74(E) does not provide for an upload, but rather a DNA *comparison*.   The DNA testing at the time of King's trial clearly established that King was not a contributor to the biological material recovered from Hudson's vagina and rectum.   Furthermore, the 2009 testing clearly established that King was not a contributor to the biological material recovered from Hudson's fingernail scrapings.   Accordingly, I believe that the prior DNA tests were, in fact, "definitive."

### 2. Outcome Determinative

**{¶45}** Under the amended version of R.C. 2953.71(L), "outcome determinative" means

> had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense.

{**¶46**} As noted above, the prior DNA testing clearly established that King was excluded as a contributor to the biological material recovered from Hudson. Assuming, arguendo, that King's request for a CODIS upload was granted, and the upload identified the contributor of the unknown DNA profile, I do not believe that this result would be outcome determinative in light of the trial testimony of the state's experts.

{**¶47**} The state's experts opined at trial that the semen recovered from Hudson — from which the unknown DNA profile was obtained — was not deposited contemporaneously with Hudson's murder. Forensic serologist, Kay May testified that at the time of Hudson's death, the semen was anywhere from 16 hours to seven days old. Chief Deputy Coroner, Dr. Robert Challener testified that it was "[v]ery unlikely" that the semen was deposited contemporaneously with Hudson's death.

{**¶48**} Accordingly, had the CODIS upload that King requested been conducted, presented at trial, and analyzed in the context of and upon consideration of all available admissible evidence, I would find that a reasonable factfinder could still have found King guilty of Hudson's murder.

{**¶49**} Based on the foregoing analysis, I would overrule King's seventh assignment of error.

### B. Access to DNA Testing Results and Materials

{**¶50**} In his eighth assignment of error, King argues that the trial court erred by failing to order the state to provide him with all of the underlying data and materials related to the postconviction DNA testing. In support of his argument, King directs this court to R.C. 2953.81(B) and (_).

{¶51} King argues that he is entitled to the test results, including "all data and lab bench notes underlying the 2009 Summary DNA Report," because the results are a public record under R.C. 2953.81(B). R.C. 2953.81(B) provides that if DNA testing is performed under R.C. 2953.73, "*[t]he results of the testing* are a public record." (Emphasis added.) Although the test results are a public record, the underlying data, bench notes, and testing materials that King requested access to are not.

{¶52} King further argues that disclosure of the results and records is mandatory pursuant to R.C. 2953.81(_), which provides that if DNA testing is performed based on an application for DNA testing under R.C. 2953.73, "[t]he court or the testing authority shall provide a copy of the results of the testing to the prosecuting attorney, the attorney general, and the subject offender." The record reflects that the 2009 DNA Laboratory Examination Report was provided to King's counsel, as required by R.C. 2953.81.

{¶53} In my view, King is essentially framing a discovery issue in the context of a postconviction relief claim of actual innocence and an application for postconviction DNA testing, and asking this court to order discovery. The postconviction relief statutes — R.C. 2953.21 and 2953.23 — and the postconviction DNA testing statutes do not provide for the discovery that King sought in his application for DNA testing, which included, but not limited to, access to the testing results, testing materials, and microscopic tissue slides from the autopsy and rape kit.

{¶54} The Ohio Supreme Court has never held that there is a right to discovery in postconviction proceedings. *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28, citing *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio

St.3d 158, 159, 718 N.E.2d 426 (1999); *see State v. Harris*, 8th Dist. Cuyahoga No. 103924, 2016-Ohio-4707, ¶ 7 (R.C. 2953.21 does not provide for discovery in preparation for filing a petition for postconviction relief.). In *Broom*, the Ohio Supreme Court explained that because R.C. 2953.21 is silent about discovery, the decision to grant or deny a request for discovery rests with a trial court's sound discretion. *Id.*

**{¶55}** The proper time for King to request access to or raise any discovery issues regarding the testing results and materials was at the time of his trial. However, the record reflects that King failed to do so. Because King requested these materials during postconviction proceedings, rather than at the time of his trial, he did not have a right to the materials through the exchange of discovery. Accordingly, I would overrule King's eighth assignment of error and find that the trial court did not abuse its discretion in denying King's request for access to the testing results and materials.

### C. Evidentiary Hearing

**{¶56}** I respectfully disagree with the majority's conclusion that the trial court abused its discretion by denying King's request for an evidentiary hearing.

**{¶57}** R.C. 2953.73(D) provides, in relevant part, "[t]he [trial] court is not required to conduct an evidentiary hearing in conducting its review of, and in making its determination as to whether to accept or reject, the application." As noted above, we review the trial court's ruling on an application for DNA testing for an abuse of discretion. Because an evidentiary hearing is not required, I do not believe that the trial court acted unreasonably, arbitrarily, or unconscionably in denying King's request for one.

{¶58} For all of the foregoing reasons, I would find that the trial court did not abuse its discretion by denying King's 2015 application for DNA testing.

## II. Successive Petition for Postconviction Relief

{¶59} Second, I respectfully disagree with the majority's conclusion that the trial court prematurely denied King's petition for postconviction relief. In my view, King's actual innocence claim is barred by res judicata, and King is not entitled to relief under R.C. 2953.23(A)(2).

{¶60} In his October 2010 petition for postconviction relief, King argued that the 2009 DNA testing results proved that he was actually innocent. The trial court denied King's petition. Furthermore, in *King II*, this court held that the 2009 DNA testing results did not clearly and convincingly establish King's actual innocence under R.C. 2953.23(A)(2). *Id.* at ¶ 19.

{¶61} Again, in his amended successive petition for postconviction relief, filed in 2015, King argued that the results of the 2009 DNA testing establish his actual innocence by clear and convincing evidence. However, unlike his 2010 petition, King submitted an affidavit, a letter, and trial testimony from experts to support his claim. King asserts that the documents from Keel, Spitz, and Zielaskiewicz support the theory that an unknown third party raped and murdered Hudson, and refute the trial testimony of the state's experts.

{¶62} The doctrine of res judicata applies to successive petitions for postconviction relief. *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990); *State v. Apanovitch*, 107 Ohio App.3d 82, 87, 667 N.E.2d 1041 (8th

Dist.1995); *McCann v. Lakewood*, 95 Ohio App.3d 226, 237, 642 N.E.2d 48 (8th Dist.1994). Typically, res judicata bars claims that could or should have been raised at trial or on direct appeal. However, res judicata also applies to foreclose a defendant from presenting claims that could or should have been asserted in a first petition for postconviction relief. *See Apanovitch* at *id*.

{¶63} In the instant matter, King's actual innocence claim is not supported by any new DNA evidence. In fact, the DNA evidence remains the same today as it was in 2009, and no additional DNA testing has been conducted since that time. Keel's, Spitz's, and Zielaskiewicz's opinions are not new evidence — they are merely new opinions or interpretations regrading the state's experts' trial testimony. King could have, and should have presented the experts' opinions to support his 2010 postconviction petition. However, King failed to do so.

{¶64} Thus, I believe that King's actual innocence claim based on the opinions of Keel, Spitz, and Zielaskiewicz is barred by res judicata. Accordingly, I would overrule King's first assignment of error.

### III. Conclusion

{¶65} For all of the foregoing reasons, I would dismiss the appeal for lack of a final appealable order. The trial court's judgment entry denying King's application for DNA testing failed to include its reasons for the denial, as required by R.C. 2953.73(D). Had the trial court's judgment entry complied with R.C. 2953.73(D), however, I would affirm the trial court's judgment in all respects.

### APPENDIX

Assignments of Error

1. A trial court's denial of a petition for post-conviction relief without an evidentiary hearing when that petitioner presents expert affidavits that directly challenge the scientific validity of the testimony by the State's trial experts and the State files nothing in response violates R.C. 2953.21(E) and requires reversal.

2. The trial court erred when it denied petitioner's successive petition for post-conviction relief and his request for relief from judgment where the defendant presented evidence establishing that he is actually innocent of the crime.

3. The trial court erred when it refused to grant relief where the defendant presented unchallenged evidence establishing that the State's case rested on false and misleading trial testimony by its expert witnesses.

4. The trial court erred when it failed to grant relief based on an ineffective assistance of trial counsel claim that was not previously pursued due to the ineffective assistance of postconviction counsel.

5. The trial court erred when it failed to consider that the admission of the scientifically unsupportable testimony of the State's trial experts undermined the fundamental fairness of his trial such that the defendant is entitled to relief based on due process.

6. The trial court erred when it failed to hold that the State violated the defendant's due process rights by refusing to provide exculpatory evidence at the time of trial and during postconviction proceedings.

7. A denial of a request for a CODIS upload of a profile obtained during post-conviction DNA testing violates R.C. 2953.74(E) and requires reversal.

8. The trial court erred when it did not order the State to produce to the defendant all of the underlying data and materials generated during post-conviction DNA testing as required by R.C. 2953.81(B).